ELLIS, Judge:
This is a suit for a declaratory judgment, in which Bertha Ory Dixon seeks to have declared her rights under the will of her late husband, Moody U. Dixon. Defendants are the 11 children of the decedent by his first marriage to Julia Courtney Dixon.
Most of the facts in the case are stipulated. Julia Courtney Dixon died on September 10,1964. Her succession has never been opened. On March 27, 1965, Moody Dixon entered into an act of partition with his 11 children, by virtue of which they divided a tract of land containing 148.839 acres, which was owned in the proportion of an undivided one-half to Mr. Dixon and an undivided one-half to the children. Under the terms of the partition, the land was divided into 11 parcels, one of which went to each child. Mr. Dixon received ownership of the improvements on Tract No. 3 as well as the usufruct of the said tract, as his share of the partition. It is stipulated that the land was worth $3,000.00 per acre at the time of Mr. Dixon’s death.
On April 8, 1965, Mr. Dixon married Bertha Ory Dixon. He died on August 28, 1975, leaving a valid testament which contained the following relevant provisions:
“I give and bequeath to my wife, Bertha Ory Dixon, all of my right, title and interest in and to all cash and funds on *638 deposit in checking or savings accounts which I may leave at my death.

“I direct that the remainder of my estate be disposed of in accordance with the laws of intestate successions.”
At the time of his death, he left funds on deposit in various accounts totalling about $41,663.99. There was also about $6,700.00 in cash in his home.
The following accounts are stipulated to be property of the community between Moody and Bertha Dixon:
Bank of Gonzales Savings Account
No. 50-1253-9 $17,521.97
Bank of Gonzales Checking Account
No. 15-4809-3 9,464.89
Bank of Gonzales Checking Account
No. 15-4602-3 190.67
Bank of Gonzales Checking Account
No. 11-2261-4 140.00
TOTAL $27,317.53
Bank of Gonzales Savings Account No. 50-0028-5, which contained $14,346.46, had a balance of $7,608.31 on the date of the marriage of Moody and Bertha Dixon. It is stipulated that half of the increase in that account since the marriage belongs to the defendants herein, and the other half to the community between Moody and Bertha Dixon. From this stipulation we conclude that one-half of the $7,608.31 or $3,804.15, is the separate property of Moody Dixon, and the other half the property of the defendants. The increase in the account is $6,738.15, and one-half of that, or $3,369.08, belongs to the community between Moody and Bertha Dixon.
As to the $6,700.00 in cash, defendants claim it to be the property of the first community. They bear the burden of proving this fact, and we find from the record that they have failed to overcome the presumption that the funds are property of the second community. Article 2405, Civil Code.
Insofar as the cash and bank accounts are concerned, therefore, Moody Dixon’s estate contains $3,804.15 in separate property, and $37,386.61 in community property, of which latter figure, one-half, or $18,693.30, belongs of right to Mrs. Dixon, the surviving spouse in community. The decedent’s total interest in the cash and bank accounts equals $22,497.46.
The record further reveals that he died leaving the improvements on Tract No. Three which are separate property and for which no value is given. He also left 350 shares of stock in Union Tank Car Company and 350 shares of Trans Union Corporation, for which no value is given, and which are stipulated to be property of the first community. He also left a 1967 Ford Falcon, a bush hog and miscellaneous household goods and effects, which are stipulated to be property of the second community, and for which no value is given. The value of the estate of Mr. Dixon at the time of his death would be the total of $22,497.46, plus the value of the improvements, one-half the value of the stock and one-half the value of the car, the bush hog and the household goods.
The major contentions made by the parties hereto involve the treatment of the act of partition entered into in 1965. Defendants claim that Mr. Dixon’s undivided one-half of the property was worth $223,258.50, and that he received only the ownership of the improvements on Tract Three and the usufruct of the tract in return, and that the partition must be considered as a donation. They further argue that the donation exceeds the disposable portion of his estate, and that the disposition made to Mrs. Dixon in the will therefore is null because it infringes on the forced portion of the children.
Article 1510 of the Civil Code provides: “When the value of donations inter vivos exceeds or equals the disposable quantum, all dispositions mortis causa are without effect.”
The above provision of the Civil Code is found in the section thereof which treats the reduction of donations made to the prejudice of the forced heirs. If the act of partition was in fact a donation, which is not clear, it was made to the forced heirs *639 and is therefore not to their prejudice. Such a donation may not be used by the forced heirs to. reduce donations mortis causa made thereafter. See Articles 1493 et seq., and Articles 1227 et seq. Civil Code. The latter articles, dealing with collation, indicate that the Code intends that donations made to forced heirs prior to the death of the donor are presumed to be advances on what they might one day expect to inherit. We find defendants’ contention to be without merit.
Mrs. Dixon, on the other hand, argues that the property allegedly donated by Mr. Dixon to his children must be included in his estate for the purpose of determining if the disposition in favor of Mrs. Dixon impinges on the legitime of the forced heirs. In other words, she wants to collate the property allegedly donated. Article 1235 of the Civil Code provides:
“The obligation of collating is confined to children or descendants succeeding to their fathers and mothers or other ascendants, whether ab intestate or by virtue of a testament.
“Therefore this collation can not be demanded by any other heir, nor even by the legatees or creditors of the succession to which the collation is due.”
Under the clear language of the above article, Mrs. Dixon is not entitled to demand collation.
We find that Mr. Dixon’s estate is as hereinabove outlined. Its total can be arrived at by taking evidence as to the value of the items described above, and adding that to his interest in the bank accounts. He can leave one-third of that amount to his widow, limited only by the value of his interest in the cash and bank accounts. It will be necessary to remand the case to the trial court for further proceedings to establish the values of the unappraised items in the estate.
The judgment appealed from is therefore amended so as to declare the bequest valid insofar as it does not impinge on the forced portion of the defendants, which shall be computed as hereinabove set forth. All costs of this appeal shall be shared by the parties hereto, with all other costs to await final disposition hereof on its merits.
AMENDED AND REMANDED.